IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIE C. HILL,

    Plaintiff,

v.                                         Civil Action No. CV-01-J-1140-S

DOC'S TRANSFER AND
WAREHOUSE, INC.,

    Defendant.

**MEMORANDUM OPINION**

    Currently pending before the court is the defendant's motion for summary judgment and evidentiary materials (doc. 31), memorandum of law in support thereof, and reply brief and motion to strike (doc. 33). Plaintiff, appearing through Kenneth Wilson, Esq., submitted a motion for summary judgment (doc. 32) and brief in opposition to defendant's motion with supporting evidentiary materials. The court, noting that Mr. Wilson is not a member of the Bar of the State of Alabama, and that he was not admitted to practice before this court at the time he filed his response, hereby strikes plaintiff's motion (doc. 32) and response, but will consider plaintiff's evidentiary submissions. The court has reviewed the defendant's motion, the defendant's memoranda of law, and the evidentiary submissions of the parties. Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that the defendant's motion for summary judgment is due to be **GRANTED**.

## I. Procedural History

The plaintiff commenced this action on May 4, 2001, by filing a complaint (doc. 1) alleging that defendant discriminated against him by failing to accommodate him for his disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, Count I, and for terminating him in retaliation for having filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), Count II. Plaintiff filed an amended complaint (doc. 12) on August 15, 2001, which described plaintiff's mental ailments as a disability and amended Count I one of the complaint. Plaintiff also seeks punitive damages, Count III.

## II. Facts

On April 6, 1997, defendant Doc's Transfer and Warehouse, Inc. ("defendant" or "Doc's") hired Willie C. Hill ("plaintiff") as a pallet machine operator. Willis decl. at 1.[1] Between April 15, 1998, and July 6, 1998, plaintiff took medical leave to have foot surgery. Willis decl. at 1. A month after plaintiff returned, he changed positions and took a sweeper job. Hill aff. at 1. The position entailed riding a scrubbing machine, mopping, sweeping, operating a forklift, and occasionally picking up pallets. Willis decl. at 2.

Plaintiff suffers from painful calluses caused by foot deformities. Hill aff. at 1-2. In August, 2000, Ed Willis asked plaintiff to operate a pallet machine. Willis decl. at 2. Plaintiff refused, without explanation, and was sent home. Willis decl. at 2. The following

---

[1] C. E. ("Ed") Willis is the President of Doc's Transfer and Warehouse, Inc. Willis hired plaintiff. Willis decl. at 1.

week, plaintiff explained to a supervisor that he could no longer operate the pallet machine because it hurt his feet. Willis decl. at 2.

Plaintiff missed several days of work in August and September of 2000, to visit doctors due to his foot problems. Willis decl. at 2. Plaintiff visited Dr. Robert Russell on August 16, 2000, because of foot pain. Def. ex. 4. On August 20, 2000, Dr. Russell wrote Ken Wilder[2] ("Wilder") at Doc's and explained plaintiff's foot ailments. Dr. Russell opined that prolonged standing and walking would increase plaintiff's pain and disability. Def. ex. 8. As a result of this letter, Wilder instructed plaintiff that he should "alternate between sweeping and riding the motorized scrubbing machine to reduce being on his feet for long periods of time." Wilder decl. at 2.

On September 5, 2000, plaintiff left Doc's because "[m]y feet were bothering me . . . ." Hill aff. at 2. Plaintiff visited Dr. Ronald Agee on September 6, 2000, which resulted in Dr. Agee excusing plaintiff from work beginning September 6 through September 12. Def. exs. 5, 9. On September 13, 2000, plaintiff failed to return to work, and instead visited his primary care physician due to **back pain**. Hill aff. at 2. On September 14, plaintiff returned to Doc's and gave Willis an excuse from Dr. Agee.[3] Hill aff. at 2. Willis then asked plaintiff

---

[2]Ken Wilder, at all times relevant to the instant action, was Vice-President of Doc's. Wilder decl. at 1.

[3]On September 13, 2000, Dr. Maurice Wainwright, one of plaintiff's treating podiatrists, wrote a letter stating that "[d]ue to the location of the deformities [on plaintiff's feet], prolong [sic] standing, walking, lifting of additional weight or pushing will aggravate the pain and discomfort to the bottom of the feet as well as the back of the heels." Def. ex. 10. Dr. Wainwright continued, stating that "Mr. Hill will obviously do better in a position that does not

3

if he could drive a forklift as it would allow him to sit all day. Hill aff. at 2; Willis decl. at 2. Defendant stated that the forklift position was considered light duty and was the only position at Doc's that would permit the plaintiff to remain off his feet for the majority of the day.[4] Def. ex. 16 at 15-17. Plaintiff replied that he did not know. Hill aff. at 2. Willis, wanting clarification, told plaintiff to return to his doctors and obtain a statement as to what kind of work he could do. Willis decl. at 2.

On September 15, 2000, Dr. Russell wrote a letter for plaintiff that stated "plaintiff is unable to perform any job activities that require a great deal of walking or standing." Def. ex. 11. Plaintiff did not return to work, and on September 26, 2000, Douglas Faucett of Doc's wrote plaintiff inquiring if he could drive a forklift or sweep floors, and that this information should come from a doctor. Def. ex. 12.

On September 27, 2000, Dr. Wainwright replied to Faucett and stated that "sweeping would probably aggravate the discomfort more so than driving a forklift since reduced weight and pressure from the feet are required to drive a forklift." Def. ex. 13. At some point in October someone from Doc's called plaintiff and asked him to come in and sign a form for

---

involve aggravating his foot problems." Def. ex. 10. The record is not clear as to whether plaintiff produced this letter to Willis upon his return to Doc's on September 14.

[4]Plaintiff's amended complaint at paragraph 12 alleges that plaintiff was not offered the forklift position until after October 20, 2000. Plaintiff contradicts this allegation at page two of his affidavit in which he states that Willis asked him if he could drive a forklift on September 14, 2000. At his unemployment compensation hearing, plaintiff acknowledged that defendant asked if he could work as a forklift driver because "I guess that's what he had to offer me." Def. ex. 16 at 12.

4

leave pursuant to the Family and Medical Leave Act [5] ("FMLA"). Hill aff. at 3. On October 19, 2000, plaintiff returned to Doc's, was offered the forklift position, and again refused it. Wilder decl. at 3. On October 20, 2000, plaintiff, Wilder, and other representatives of Doc's met. Wilder decl. at 3. In this meeting, Doc's offered plaintiff the forklift position. Wilder decl. at 3. Plaintiff refused. Wilder decl. at 3. Wilder then suggested that plaintiff take leave pursuant to the FMLA to cover the period of his absence. Wilder decl. at 3. Plaintiff had not worked since September 5, 2000, and defendant wanted to back date the FMLA form to that date. Hill aff. at 3. Plaintiff refused to backdate the form because "I had not been disabled during that time." Hill aff. at 3. Defendant informed plaintiff that if he did not sign the form, he would be fired. Hill aff. at 3. Plaintiff "told him to do whatever he needed to do. I then told them I was leaving because I was tired. I then left." Hill aff. at 3. "Plaintiff was then terminated because of his absences and refusal to return to work." Wilder decl. at 3.

On October 23, 2000, Wilder sent plaintiff a termination letter effective October 20, 2000. Def. ex. 15. On October 23, plaintiff filed a charge of discrimination with the EEOC alleging that defendant had failed to accommodate him and discriminated against him because of his disability. Def. ex. 1. Plaintiff also filed a grievance with his union on November 9, 2000, in which plaintiff alleged he was discharged unjustly. Def. ex. 17. Defendant offered to settle the grievance and reinstate plaintiff to full time employment if

---

[5]Plaintiff saw Dr. Charles Johnson at the Veteran's Administration hospital on October 6, 2000. Def. ex. 25. Dr. Johnson found plaintiff under a temporary disability due to a depressive disorder. Def. ex. 25.

he filled out the FMLA forms dating from September 5, 2000, accepted the forklift operator position, and withdrew his EEOC complaint. Def. ex. 19. Plaintiff refused because the offer did not include the back pay plaintiff desired for the time in which he had not been working. Hill aff. at 4.

Plaintiff filed a second EEOC charge of discrimination against defendant on November 21, 2000, alleging that he had been fired in retaliation for having filed a previous charge of discrimination. Def. ex. 2. Plaintiff filed for Social Security disability benefits on October 9, 2000, alleging a disability onset date of September 6, 2000, the day after he left work. Def. ex. 22. On June 26, 2001, an Administrative Law Judge found plaintiff disabled effective September 6, 2000. Def. ex. 26. Plaintiff also applied for Unemployment Compensation, which was denied. Def. ex. 27. Plaintiff appealed the denial and on February 2, 2001, had a hearing in the Birmingham Employment Security Office. Def. ex. 16.[6] During hearing, plaintiff was asked:

> Q: Okay. The doctor's statement indicates that being on your feet will cause pain . . . . Can you stand on your feet all day and work?
> A: Yeah.
> Q: Even though you find it painful?
> A: Well, the calluses, they can remove it, and there'd be no problem.
> Q: Okay. When you showed this to Mr. Willis, did you tell him that you thought you could do the job?
> A: I had no problem doing the job. I'd been doing the job for over two years.
> Q: Were you asking him for any kind of transfer to any other job, or any kind of accommodation?
> A: No. I didn't ask him for anything. The problem arose, he wanted me to run this

---

[6] Plaintiff appears to have an active appeal of his unemployment denial before the Alabama Civil Court of Appeals. Def. ex. 27.

pallet machine, and I was on light duty.

Def. ex. 16 at 6.

Plaintiff's testimony that he never requested an accommodation is corroborated by Wilder and Willis. Wilder decl. at 4; Willis decl. at 3. Furthermore, plaintiff specifically denied being disabled. Def. ex. 16 at 10.

On May 4, 2001, plaintiff filed the complaint (doc. 1) in the instant action. On August 15, 2001, plaintiff amended his complaint (doc. 12). Count I of the amended complaint states: "Defendant's failure to make a reasonable accommodation (modification to the forklift) or other sedentary position for Mr. Hill's disability due to his foot deformities and discharge of him constitute discrimination in violation of the ADA." Amended complaint at ¶17. Count II of the amended complaint states: "Defendant's termination of Mr. Hill because he would not withdraw his complaint with the EEOC constitutes retaliatory discharge." Amended complaint at ¶18.

### III. Standard of Review for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2552. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the non-moving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed. R. Civ. Pro. 56(e)). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes*

v. *S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50, 106 S.Ct. at 2511. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S.Ct. at 2512.

### IV. Analysis

The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, the plaintiff must show that "(1) he has a disability; (2) he is a 'qualified individual,' which is to say, able to perform the essential functions of the employment position that he holds . . . with or without

9

reasonable accommodations; and (3) he was discriminated against because of the disability." *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir.2000). In addition, plaintiff must show that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled. *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir.1996).

The defendant presents two arguments in support of its motion for summary judgment the court finds meritorious.[7] First, defendant argues that plaintiff is not disabled within meaning of the ADA. Second, defendant argues that plaintiff is not a "qualified individual" under the ADA because he did not request a reasonable accommodation.

The ADA defines disability as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; or (B) a record of such an impairment or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). The United States Supreme Court has fashioned a three part analysis for consideration of a claim under subsection (A), above: (1) whether the plaintiff had a physical impairment; (2) identification of the life activity upon which plaintiff relies and determining whether it constitutes a major life activity under the ADA; and (3) whether the impairment substantially limits the major life activity. *See Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998). Thus, to establish a prima facie case and survive summary judgment, the plaintiff must present sufficient evidence to create a genuine issue of material

---

[7]The defendant makes the argument that because plaintiff is disabled for social security purposes, the plaintiff is precluded from asserting that he is a qualified individual under the ADA. Because the court finds defendant's motion for summary judgment is due to be granted on other grounds, the court will not address the merits of this argument.

fact as to whether his physical impairments substantially limit his ability to partake in a major life activity. *See Swain v. Hillsborough County School Bd.*, 146 F.3d 855, 857 (11th Cir.1998).

The EEOC defines major life activity as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limited" is defined by the EEOC for ADA purposes to mean:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). In deciding whether a major life activity has been substantially limited, the EEOC provides several factors to consider:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term

impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2); *Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d 907, 911 (11th Cir.1996).

The court finds evidence in this case that suggests that plaintiff is substantially limited from performing the major life activity of walking. *See* 29 C.F.R. § 1630.2(i)-(j). The evidence in this case and the plaintiff's pleadings, however, are remarkably contradictory.

In his affidavit, plaintiff states that he refused to backdate his FMLA form in October of 2000 to September 5, 2000, because "I had not been disabled during that time." Hill aff. at 3. In his application for Social Security disability benefits plaintiff alleged a disability onset date of September 6, 2000.[8] Def. ex. 27. Plaintiff, in his unemployment compensation hearing of February 2, 2001, again denied being disabled and stated that he only wanted to go to work. Def. ex. 16 at 10. However, plaintiff left work on September 5, 2000, and was offered, on several occasions, a position that involved less time on his feet. *See, e.g.*, Willis decl. 2-4. Plaintiff, in spite of his expressed desire to return to work, never returned. On October 20, 2000, when an employee of Doc's informed plaintiff that he would be fired for not returning to work plaintiff replied "I told him to do whatever he needed to do." Hill aff. at 3. The evidence strongly suggests that plaintiff walked out on his job and refused to return, which resulted in his termination.

Assuming *arguendo* that plaintiff has established a physical impairment that substantially limits a major life activity, walking. The second step of the prima facie case requires plaintiff to show that he is "a 'qualified individual,' which is to say, able to perform the essential functions of the employment position that he holds . . . with or without reasonable accommodations . . . ." *Reed*, 206 F.3d at 1061. An employer has a duty to provide reasonable accommodations under the ADA. *See Gaston v. Bellingrath Gardens &*

---

[8]The court recognizes that it is possible to be disabled for the purposes of Social Security disability benefits and remain a "qualified individual" for ADA purposes. *See, e.g., Talvera v. School Bd. of Palm Beach County*, 129 F.3d 1214 (11th Cir.1997).

*Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir.1999). However, this duty is not triggered unless the ADA plaintiff makes a specific demand for a reasonable accommodation. *Id.* Moreover, "the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir.1997).

In this case, the evidence indicates that defendant sought to place plaintiff in the forklift position because it was the only position at Doc's that would allow plaintiff to remain off his feet. *See, e.g.*, Def. ex. 16 at 15-17. There is no evidence that plaintiff could not perform the duties of the forklift position. Indeed, plaintiff himself stated that he did not know if he could perform the job. Hill aff. at 2. Plaintiff did not produce any letters from his doctors that indicated an inability to perform the duties of a forklift driver. In fact, Dr. Wainwright's September 27, 2000, letter to defendant states that "sweeping would probably aggravate the discomfort more so than driving a forklift since reduced weight and pressure from the feet are required to drive a forklift." Def. ex. 13. The defendant attempted to place plaintiff in a position that would limit his time on his feet. Rather than accept the position, or at least explain why the forklift position would not suffice, and what defendant could do to assist him, plaintiff left work and did not return.

Count I of plaintiff's amended complaint states that defendant failed "to make a reasonable accommodation (modification to the forklift) or other sedentary position for Mr.

Hill's disability due to his foot deformities . . . ." Amended complaint at ¶17. There is no evidence in this case indicating that plaintiff made any request for an accommodation to the forklift position or for an accommodation in the form of a sedentary position. The only mention of an accommodation in the record comes in the complaint and the amended complaint. The complaint and amended complaint, however, are not evidence. The evidence shows that plaintiff said his feet hurt and then left his position without further explanation. Moreover, the plaintiff specifically denied requesting an accommodation. Def. ex. 16 at 6. Plaintiff's sworn testimony at this unemployment compensation hearing was that he could perform the sweeper position and needed no accommodation. Therefore, defendant's motion for summary judgment on Count I is due to be **GRANTED**.[9]

Count II of plaintiff's complaint states that "[d]efendant's termination of Mr. Hill because he would not withdraw his complaint with EEOC constitutes retaliatory discharge." Amended Complaint at ¶18. This count is based on plaintiff's November 21, 2000, EEOC charge in which he alleged that defendant fired him in retaliation for having filed a previous charge of discrimination. Def. ex. 2. Defendant terminated plaintiff on October 20, 2000 by letter dated October 23, 2000. Def. ex.15; Wilder decl. at 3. Plaintiff filed his charge of discrimination with the EEOC on October 23, 2000. Def. ex. 1. As the date of termination precedes the date plaintiff filed his first EEOC charge, defendant could not have terminated

---

[9]To the extent that plaintiff attempts to show defendant failed to accommodate him due to his mental disability, plaintiff's claim fails because the record devoid of any evidence that plaintiff specifically demanded an accommodation due to his depressive disorder. *See Gaston*, 167 F.3d at 1363.

plaintiff in retaliation for that charge of discrimination. Therefore, defendant's motion for summary judgment on Count II is due to be **GRANTED**.

Count III of plaintiff's amended complaint states: "Defendant's termination and/or retaliation discharge constitutes gross, wanton, reckless, and/or intentional violation of his rights under the ADA, entitling him to punitive damages." Amended complaint at ¶19. The court finds, as a matter of law, that defendant did not violate the ADA, nor did the defendant terminate plaintiff in retaliation for filing and/or failing to withdraw his EEOC charge. The court, therefore, concludes that defendant's motion for summary judgment as to Count III is due to be **GRANTED**.

## V. Conclusion

In consideration of the foregoing, the court can find no genuine issue of material fact left for trial. As such, defendant's motion for summary judgment is be and hereby is **GRANTED** on all counts of the complaint. This case is **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this the 17 day of May, 2002.

Inge P. Johnson
United States District Judge